UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

JUAN SIMMONS,

          Plaintiff,

                                    Case No. 2:19-cv-91

v.

                                      Honorable Gordon J. Quist

S. LIEDEL et al.,

          Defendants.

_____/

## OPINION

      This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint against Defendants Liedel, Thompson, Ledford, Kelly, and McLean for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). In addition, all of Plaintiff's claims against Defendant Oja will be dismissed for failure to state a claim, with the exception of Plaintiff's claim that Defendant Oja violated Plaintiff's First Amendment rights when, on December 9, 2018, in retaliation for

Plaintiff's filing of an administrative grievance, Defendant Oja wrote a misconduct ticket against Plaintiff.

**Discussion**

### I. Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Michigan. The events about which he complains occurred at that facility. Plaintiff sues several MDOC employees at URF: mailroom staff person S. Liedel; Resident Unit Manager Unknown Thompson; Prisoner Counselors Unknown Ledford and Unknown Kelly; Corrections Officer Unknown Oja; and Grievance Coordinator M. McLean.

On May 16, 2018, Plaintiff entered pleas of guilty to charges of armed robbery, Mich. Comp. Laws § 750.529; assault with intent to do great bodily harm, Mich. Comp. Laws § 750.84; and felony firearm, Mich. Comp. Laws § 750.227b, in the Wayne County Circuit Court. *See* https://cmspublic.3rdcc.org/CaseDetail.aspx?CaseID=3655682 (visited June 10, 2019). On June 12, 2018, the court sentenced Plaintiff to 4 to 25 years for armed robbery and 4 to 10 years for assault with intent to do great bodily harm. *Id.* Those concurrent sentences were to be served consecutively to a sentence of 2 years for felony firearm. *Id.* On July 11, 2018, the court appointed attorney Gerald Ferry, 20816 E. 11 Mile Road, Suite 202, St. Clair Shores, Michigan, to serve as Plaintiff's appellate counsel. (Wayne Cty. Cir. Ct. Order, ECF No. 1-2, PageID.19.)

Plaintiff alleges that he and attorney Ferry visited by institutional video on October 11, 2018. During that visit, attorney Ferry advised Plaintiff that: (1) he was mailing copies of the trial court transcripts and brief to Plaintiff; (2) he would be filing the brief within 2

weeks; (3) Plaintiff should immediately review the brief and transcripts to inform Ferry of any issues Plaintiff would like to raise; and (4) Plaintiff had an 84-day time limit to file a pro per brief.[1] (Compl., ECF No. 1, PageID.4-5.)

On December 3, 2018, Defendant Liedel prepared a notice of package/mail rejection for mail addressed to Plaintiff. (Notice of Package/Mail Rejection, ECF No. 1-1, PageID.17.) The notice indicated that Plaintiff had received mail: "a package of 1 lb. 2 oz of paperwork . . . too voluminous to search. Legal mail was written in marker on the outside of the envelope; however, [the package] appears to be sent from a member of the pu[b]lic as the return address does not appear to be from a legal entity." (*Id.*) The notice identified the policies under which the mail was being rejected:

> FF.     Only mail received directly from an attorney or a law firm, a legitimate legal service organization, the department of Attorney General, a prosecuting attorney's office, a court, a clerk of the court, a Friend of the Court office, or the Office of the Legislative Corrections Ombudsman is considered legal mail, and only if the mail is clearly identified on the face of the envelope as being from one of the above. It is not sufficient for the envelope to be simply marked "legal mail."

> OO.     Mail which prevents an effective search may provide a means of introducing controlled substances, for example Suboxone or Fentanyl, or other contraband which poses a threat to the security, good order, or discipline of the facility.

(*Id.*)

---

[1] The 84-day time limit is set out in Michigan Supreme Court Administrative Order 2004-6 titled "Minimum Standards for Indigent Criminal Appellate Defense Services." Standard 4 of the order permits a criminal defendant to raise issues on appeal *in propria persona* if counsel determines it is not advisable to raise such issues. The standard provides: "The defendant's filing . . . must be received by the Court of Appeals within 84 days after the appellant's brief is filed by the attorney, but if the case is noticed for submission within that 84-day period, the filing must be received no later than 7 days before the date of submission, or within the 84-day period, whichever is earlier." *Id.* The standard's reference to appellant's brief, the specified time periods, and the reference to a case being noticed for submission, suggest that Standard 4 applies to an appellant's brief, as described in Michigan Court Rule 7.212, and not an application for leave to appeal, as described in Michigan Court Rule 7.205. The Court's experience reviewing state court records in connection with habeas corpus petitions under 28 U.S.C. § 2254, however, suggests that the Michigan Court of Appeals will consider an *in propria persona* submission by a criminal defendant in support of an application for leave to appeal as well.

On December 6, 2018, Defendant Oja delivered the rejection notice to Plaintiff. Plaintiff requested an administrative hearing. He specifically requested a copy of the envelope to determine if URF had promptly processed the mail. Plaintiff was concerned about the two-month delay between his attorney's promise to send the materials and the processing of the materials at URF. Plaintiff wanted to see the postmark to determine if that delay was the fault of URF.

Defendants Liedel, Ledford, Kelly, and Thompson either failed to investigate to Plaintiff's satisfaction, participated in the administrative hearing, or communicated the result to Plaintiff. The rejection was upheld. Plaintiff was offered the opportunity to send the mail home. The alternative to sending the material home was its destruction.

Plaintiff was never provided a copy of the envelope to determine if the delay was the fault of his attorney or URF. Plaintiff alleges that because of the rejection of his legal materials, he was unable to submit a Standard 4 brief in his direct appeal raising three specific issues:

1. Ineffective assistance of trial counsel on plea offer. Trial attorney coerced appellant to take a plea after Trial Judge THREATENED TO DISMISS ALL CHARGES.

2. Ineffective assistance of counsel for failure to contest prosecution withholding VIDEO CAMERA FOOTAGE of . . . Arrest & Search. The VIDEO CAMERA FOOTAGE depicts Detroit Police Officers THREATENING my pregnant girlfriend and myself to take the children unless I admit to the Crime and that we must Consent to a Search of the premises.

3. Ineffective Assistance of Counsel for failure to investigate discovery to contest lack of Probable Cause, Search & Seizure, and failed to file a Suppression Motion.

(Compl., ECF No. 1, PageID.7.)

Plaintiff either filed a grievance regarding the matter on December 7, 2018, or at least expressed his intention to do so. Plaintiff claims that Defendant Oja threatened Plaintiff the

same day: "Mr. Simmons, my PC's say you are giving them shit about your Legal Mail from your Attorney, filing Complaints, and when my PC's tell me you are giving them problems, writing grievances, I handle it." (Compl., ECF No. 1, PageID.11.) Plaintiff claims Oja made good on the threat on December 9, 2018. On that date, Oja called Plaintiff to the Prisoner Counselor Office, took pictures of Plaintiff's tattoos, and stated:

> You have tat[t]oos that you didn't have when you arrived in the Michigan Department of Corrections. I'm writing you a Misconduct Report for DANGEROUS CONTRABAND. Contrary to PD-03.03.105 Attachment A Page 2 which states: "(030) 'POSSESSION OF DANGEROUS CONTRABAND' "Unauthorized possession of a TAT[T]OO DEVICE, like I told you, when my PC's (Prison Counselor) tell me you cause problems for them, filing complaints and grievances about your Legal Mail, I cause problems for you."

(*Id.*) On December 12, 2018, hearing officer O'Brien found Plaintiff guilty of the Class I Misconduct. Plaintiff received a sanction of 15 days of Top Lock. There was no evidence that Plaintiff actually possessed a tattoo device. The finding of guilt was based on the assistance Plaintiff provided to the tattoo artist who used a tattoo device on Plaintiff.

Even before the URF mailroom processed Plaintiff's package from Attorney Ferry, on November 26, 2018, Attorney Ferry had filed Plaintiff's delayed application for leave to appeal. *See* https://courts.michigan.gov/opinions_orders/case_search/pages/default.aspx (search Michigan Court of Appeals docket number 346499, visited June 10, 2019). The Michigan Court of Appeals denied leave on January 3, 2019. *Id.* The court of appeals denied relief a mere 38 days after the filing of Plaintiff's application for leave to appeal. Thus, to the extent Plaintiff was entitled to file a Standard 4 brief, Plaintiff was never allowed his 84-day period or even a 7-day period following a notice of submission.

Plaintiff filed a pro per motion for reconsideration on January 18, 2019. *Id.* It is not clear from Plaintiff's complaint whether he raised his three "Standard 4" issues in that motion.

The court of appeals denied relief on February 26, 2019. *Id.* Plaintiff then filed a pro per application for leave to appeal on April 24, 2019, presumably raising the three ineffective-assistance-of-counsel issues he raises in this complaint. He filed the complaint in this case the next day.

Plaintiff claims that just days before he filed this action, on April 15, 2019, at 2:45 p.m., Defendant Thompson visited Plaintiff's cell and woke Plaintiff up. Thompson gave Plaintiff a direct order to report to the lobby officer's desk and threatened Plaintiff with a disobeying-a-direct-order misconduct ticket and an out-of-place misconduct ticket. Then, Thompson stated: "I remember you, I'm going to come wake you up at 6:00 a.m. Why were you sleeping at 2:30 in the afternoon. You are the one writing grievances on all of us for your Legal Mail. I'll be back to wake you up again." (*Id.*, PageID.10.)

Plaintiff claims Defendant McClean failed to process a grievance Plaintiff filed against Defendant Oja for the retaliatory contraband misconduct and then failed to process grievances and complaints Plaintiff filed against McClean for McClean's failure to process the Oja grievance.

Plaintiff claims all of the Defendants colluded to deny Plaintiff equal protection and due process. Plaintiff claims further that the Defendants colluded to interfere with his legal mail and thereby deny Plaintiff access to the courts. Finally, Plaintiff claims that all the Defendants colluded to retaliate against Plaintiff for exercising Plaintiff's First Amendment right to voice complaints or file grievances.

Plaintiff seeks damages in the amount of $600,000.00.

## II.    Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating

federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III.     Interference with Incoming Mail

Plaintiff builds his complaint on the claim that the Defendants wrongfully interfered with his legal mail. That foundational claim implicates several distinct constitutional rights: Plaintiff's First Amendment right to receive mail; Plaintiff's First or Fourteenth Amendment right to access the courts; Plaintiff's Fourteenth Amendment right to due process; and Plaintiff's Sixth Amendment right to counsel in his criminal proceedings.

Plaintiff does not dispute Defendant Liedel's description of the envelope; instead, Plaintiff contends that Defendants should have confirmed that the sender, G. Ferry, was Plaintiff's attorney. Plaintiff bases his contention on the following language in the Prisoner Mail policy directive:

> II.     If it appears upon receipt that mail requiring special handling may have been mailed from someone other than the identified sender, mail-room staff shall confirm the mailing with the identified sender at a VERIFIED TELEPHONE NUMBER (e.g. MICHIGAN BAR JOURNAL). If confirmed, the mail shall then be processed with special handling. If the identified sender did not send the mail, an e-mail shall be sent to the identified sender confirming this information.

(Compl., ECF No. 1, PageID.4) (quoting MDOC Policy Directive 05.03.118). Additionally, Plaintiff claims Defendants should have provided a copy of the envelope based on the following:

> MM.     An incoming envelope received directly from an attorney or law firm, a legitimate legal service organization, a legal service organization, the Department of Attorney General, a prosecuting attorney's office, a court, a clerk of the court, a Friend of the Court office, or the Office of the Legislative Corrections Ombudsman shall be discarded only after a copy of the envelope is made showing the name and address of the sender and postmark. The copy shall be delivered to the prisoner instead of the original incoming envelope and its content processed in accordance with his policy.

MDOC Policy Directive 05.03.118.[2]

The flaw in Plaintiff's argument is the premise that the mailing was legal mail received directly from an attorney and that, therefore, it required special handling. The policy language upon which Defendant Liedel relied, ¶ FF, specifies that mail received from an attorney is considered legal mail only if the mail is clearly identified on the face of the envelope as being from an attorney and that marking an envelope "legal mail" is not enough. Plaintiff does not dispute that G. Ferry's envelope failed to comply. Essentially, no matter what constitutional amendment gives rise to Plaintiff's "mail interference" claim, the claim hinges on whether or not the Defendants are constitutionally permitted to rely on the MDOC policy definition of legal mail.

In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Supreme Court considered the constitutional implications of a Nebraska correctional facility policy similar to MDOC Policy Directive 05.03.118, ¶ FF. The Court stated:

> If prison officials had to check in each case whether a communication was from an attorney before opening it for inspection, a near impossible task of administration would be imposed. We think it entirely appropriate that the State require any such communications to be specially marked as originating from an attorney, with his name and address being given, if they are to receive special treatment.

---

[2] Plaintiff's claims that Defendants may have failed to follow their own laws, rules, or policies does not, without more, rise to the level of a § 1983 violation. Claims under § 1983 can only be brought for "deprivation of rights secured by the constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Similarly, Defendants' alleged failures to comply with administrative rules or policies does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest).

*Wolff*, 418 U.S. at 576. In *Merriweather v. Zamora*, 569 F.3d 307 (6th Cir. 2009), the Sixth Circuit

Court of Appeals considered the constitutional implications of the Bureau of Prisons' similar

policy:

> The BOP policy at issue provides that mail will only be treated as special mail if "the envelope is marked with the attorney's name and an indication that the person is an attorney," and "the front of the envelope is marked 'Special mail-Open only in the presence of the inmate.'" 28 C.F.R. § 540.19(b). It is the inmate's responsibility to inform his legal counsel of these requirements. *Id.* If any of the requirements are missing, "staff may treat the mail as general correspondence and may open, inspect, and read the mail." 28 C.F.R. § 540.18(b). The Supreme Court considered the validity of similar provisions in *Wolff v. McDonnell*, 418 U.S. 539, (1974), a case cited by the defendants in support of their argument. In *Wolff*, the Court specifically approved a Nebraska regulation that allowed prison authorities to open inmates' legal mail and search it for contraband without reading the mail's contents as long as the inmate was present. 418 U.S. at 576-77. Nebraska's prior policy had been to read all incoming mail, regardless of whether it was from an attorney. *Id.* at 574. . . . The Supreme Court emphasized the narrowness of its holding by noting it only "assum[ed] some constitutional right is implicated" but did not decide the issue. *Id.* at 576. Whatever that right may be, Nebraska had "done all, and perhaps even more, than the Constitution requires." *Id.* at 577.

*Merriweather*, 569 F3d at 315-16.

Based on the facts alleged by Plaintiff, Defendants were justified in treating the

package from G. Ferry as regular mail. None of the special handling requirements—the

requirements upon which Plaintiff's claims rely—apply.

Plaintiff does not identify any constitutional infirmity in the handling of the G.

Ferry package as regular mail. Plaintiff also does not allege that the ground for rejecting the mail,

its volume, is untrue or inappropriate.

"A prison inmate maintains those First Amendment rights that are not inconsistent

with his status as a prisoner or with the legitimate penological objectives of the corrections

system." *Johnson v. California*, 543 U.S. 499, 510 (2005). Thus, the First Amendment protects a

prisoner's receipt of incoming mail, subject to limitation by legitimate penological interests.

10

*Sheets v. Moore*, 97 F.3d 164, 166 (6th Cir. 1996); *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992). The Supreme Court has held that prison regulations (similar to those in Michigan) allowing a warden to reject any publication for good reason pursuant to specific criteria did not violate the First Amendment because the regulations were reasonably related to legitimate penological interests. *Thornburgh v. Abbot*, 490 U.S. 401, 413 (1989). The Court applied four factors relevant to the inquiry whether the restriction is reasonably related to legitimate penological interests: (1) whether there is a valid rational connection between the regulation and the legitimate governmental interest which it allegedly furthers, (2) whether there are alternative means by which the inmate may exercise the right impinged, (3) what impact the accommodation of the inmate's constitutional right will have on guards, other inmates, or the allocation of prison resources generally, and (4) the existence or absence of ready alternatives to the regulation in question. *Turner v. Safley*, 482 U.S. 78, 88-91 (1987) (cited in *Thornburgh*, 490 U.S. at 414-18).

In this instance, the notice of mail rejection identifies the penological interest that motivated the rejection of the package from G. Ferry. The volume precluded an adequate examination to determine whether or not the package contained contraband. This Court has previously recognized the legitimacy of the penological interest that is furthered by a rule limiting the volume of incoming mailings. In *Young v. Weathersby*, No. 1:09-cv-67, 2010 WL 3909463 (W.D. Mich. Sep. 15, 2010) *report and recommendation adopted,* 2010 WL 3909453 (Sept. 30, 2010), MDOC personnel rejected a 48-page mailing because it was so voluminous that it could not be readily reviewed for contraband or other threats. *Id.* at *8. The Court stated:

> There is a valid rational connection between the prison regulation . . . and the legitimate governmental interests put forward to justify it. Plaintiff retains the ability to receive other correspondence. Accommodation of the right plaintiff claims would

> effectively destroy the State's ability to keep harmful material out of the prison. Prisoners could simply hide harmful content within a sufficiently large quantity of other papers to thwart detection. There are no ready alternatives available that fully accommodate the right plaintiff claims at a *de minimis* cost to valid penological objectives.

*Id.* This Court reached the same conclusion in *Hurick v. Berghuis*, No. 1:13-cv-61, 2014 WL 1256000, at *11 (W.D. Mich. Mar. 26, 2014) ("[T]he contents of the envelope, a two-inch stack of paper, was too voluminous to be searched by mailroom staff. . . . The MDOC has a legitimate interest in ensuring that incoming mail is fully searched before it is released to a prisoner.") (footnote and citations omitted). *See also Hall v. Johnson*, 224 F. Supp. 2d 1058, 1060 (E.D.Va. 2002) (upholding policy where all general purpose correspondence over one ounce in weight was rejected because it allowed mail room personnel to quickly scan a shorter document for potential security risks, such as escape plans); *Harksen v. Braxton*, No. 7:04-cv-00243, 2004 WL 5645580, at *3 (W.D. Va. Nov. 9, 2004) (court upheld rule that correspondence might not exceed one ounce or five pages "so that prison staff are not overwhelmed with voluminous correspondences. The rule does not limit the amount of mail a prisoner receives, it merely optimizes screening procedures."); *McKenzie v. Fabian*, No. 07-4441, 2009 WL 2982641, at *10 (D. Minn. Sep. 11, 2009) (upholding weight limit on incoming mail because the policy "is rationally related to its objective of preventing contraband from entering the prison and taking into account the finite resources of the prison").

Accepting Plaintiff's allegations as true, consideration of the four *Turner* factors puts an end to his "regular mail" First Amendment claim. There is a valid rational connection between the rule limiting the volume of incoming mail and the legitimate governmental interests which it furthers: preserving the safety of the institution from contraband and the resources of the prison expended to ensure that safety. Plaintiff has alternative means by which he might receive

the documents. He can receive them over the course of fewer mailings spread over time. Courts have routinely recognized that the accommodation of the inmate's right to receive any volume of mail would increase the danger of contraband entering the prison and, thus, would jeopardize the safety of guards and other inmates. Or, alternatively, effective screening of voluminous mailings would consume an inordinate amount of prison resources. Because volume dictates risk and demands resources, there appears to be no ready alternative to a volume limit. Accordingly, Plaintiff's receipt of a voluminous mailing is not protected by the First Amendment because it would be inconsistent with the legitimate penological objectives of the MDOC. Plaintiff has, therefore, failed to state a claim for violation of his First Amendment rights.

Plaintiff's First Amendment right to communicate by mail, even though it is qualified by the circumstance of imprisonment, is a liberty interest within the meaning of the Fourteenth Amendment. *Procunier v. Martinez*, 416 U.S. 396, 417 (1974), overruled on other grounds by *Thornburgh v. Abbott*, 490 U.S. 401, 413-14 (1989); *see also Stanley v. Vining*, 602 F.3d 767, 769-70 (6th Cir. 2010). The fundamental requirement of due process is the right to be heard "at a meaningful time and in a meaningful manner." *Mertik v. Blalock*, 983 F.2d 1353, 1364 (6th Cir. 1993) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). With respect to incoming mail, the decision to censor such mail must be accompanied by "minimal procedural safeguards," such as notice and an opportunity to be heard. *See Procunier*, 416 U.S. at 417-19. It is sufficient that the prisoner receives notice that his mail is being rejected, has a reasonable opportunity to protest that decision, and receives review by an official other than the person who originally disapproved the correspondence. *Id*. at 418.

Plaintiff argues that he was denied due process because Defendants did not investigate whether the mailing was from his attorney and because they failed to provide the

envelope or a copy of the envelope at the administrative hearing. Yet, Plaintiff acknowledges receipt of the notice and alleges that he had the opportunity to present the same arguments he now presents to this Court to the hearing officer.

Plaintiff was heard, he simply does not like the result. "The Due Process Clause does not guarantee that the procedure will produce a correct decision." *Wilson v. Harry*, No. 1:17-cv-361, 2017 WL 1614008, at *5 (W.D. Mich. May 2, 2017). "[T]he deprivation by state action of a constitutionally protected interest in 'life, liberty or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (emphasis in original). Because Plaintiff was provided notice and an opportunity to be heard, he has failed to state a claim for violation of his due process rights in connection with the mail rejection hearing.

Although Plaintiff's main complaint is that his mail should have been considered as legal mail, he also suggests that Defendants took too long to process his mail. Plaintiff's suggestion that Defendants took too long to process his mail is mere speculation. (Compl., ECF No. 1, PageID.5) (asserting that "a 2 month time period may have lapsed with my Legal Mail sitting in Chippewa Mail-room . . . ."). He alleges no facts to indicate when the package was sent. Based on his attorney's expression of intention to mail documents, Plaintiff offers a two-month delay as a possibility. The "sheer possibility that a defendant has acted unlawfully" is not sufficient to state a claim. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

## IV.    Conspiracy

A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). The plaintiff must show the

existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Plaintiff alleges that the Defendants colluded as they violated his constitutional rights. His allegations of conspiracy are conclusory and speculative. Even viewed in the light most favorable to Plaintiff, his allegations describe a number of discrete facts that occurred over a period of time involving numerous individual officers. Plaintiff has provided no allegations establishing a link between the alleged conspirators or any agreement between them. He relies entirely on a highly attenuated inference from the mere fact that the mail rejection process involved a number of prison officials. As the Supreme Court has held, such allegations, while hinting at a "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. Instead, the Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680. In light of the far more likely possibility that the various incidents occurring during the mail rejection process were related by procedure, not agreement, Plaintiff fails to state a plausible claim of conspiracy.

V.        **Failure to Process Plaintiff's Grievances**

Plaintiff claims that the Defendant McLean failed to process or otherwise interfered with the processing of a grievance complaining of Defendant Oja's retaliation and then a grievance complaining of Defendant McLean's failure to process the Oja grievance.  Construed liberally, Plaintiff's allegations might give rise to a claim under the First Amendment for interference with Plaintiff's First Amendment right to petition for redress of grievances.  The amendment stops the government from generally prohibiting expressions in the form of petitions for redress and from imposing sanctions on one who petitions for redress.  *Smith v. Arkansas State Highway Emp., Local 1315*, 441 U.S. 463, 464 (1979).  In *Apple v. Glenn*, 183 F.3d 477 (6th Cir. 1999), the Sixth Circuit explained the nature of the right:

> The First Amendment guarantees "the right of the people . . . to petition the Government for a redress of grievances."  U.S. Const. amend. I.  "The right to petition is cut from the same cloth as the other guarantees of that Amendment, and is an assurance of a particular freedom of expression."  *McDonald v. Smith*, 472 U.S. 479, 482 (1985).  The First Amendment protects Apple's right to petition, but his suit is founded completely on a mistaken reading of that Amendment.  A citizen's right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views.

*Apple*, 183 F.3d at 479; *see also BPNC, Inc. v. Taft*, 147 F. App'x 525, 531 (6th Cir. 2005) ("The purpose of the Petition Clause, though, is to ensure that citizens may communicate their will through direct petition to the legislature and government officials.").  Thus, Plaintiff has a First Amendment right to file grievances against prison officials, *Herron v. Harrison*, 203 F. 3d 410, 415 (6th Cir. 2000), but the amendment does not require the government to consider, respond to, or grant relief on that grievance.

Plaintiff's allegations suggest that he is trying to expand his right to petition for redress—to complain about prison officials—into a right to compel those officials to listen, or at least to follow their own procedures.  The protections afforded by the right to petition are not that

16

broad. It is a right of expression, not a right to process following the expression. "[A] state has no federal due process obligation to follow all of its own grievance procedures . . . ." *Carlton v. Jondreau*, 76 F. App'x 642, 644 (6th Cir. 2003). An inmate does not have a constitutionally protected interest in a jail or prison grievance procedure or the right to an effective procedure. *Walker v. Michigan Dep't of Corrections*, 128 F. App'x 441, 445 (6th Cir. 2005) ("All circuits to consider this issue have also found that there is no constitutionally protected due process right to unfettered access to prison grievance procedures.") (listing cases); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003) ("[T]here is no inherent constitutional right to an effective prison grievance procedure."); *Mahammad v. Serett*, No. 88-5396, 1988 WL 113996, at *1 (6th Cir. Oct. 24, 1988) ("[I]nmate grievance procedures are not constitutionally required in state prison systems, therefore, the defendant's alleged failure to follow grievance procedures does not give rise to a § 1983 claim."). Section 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

Even if Defendant McLean stalled Plaintiff's pursuit of the grievance procedure, such conduct does not rise to the level of a blanket prohibition on submitting petitions for redress that implicates the First Amendment. Indeed, Plaintiff's continuing ability to petition for redress is underscored by his pro se invocation of the judicial process in this case.

Plaintiff complains that Defendant McLean ignored the policies and rules that govern his actions as grievance coordinator when he allegedly refused to process Plaintiff's grievances against Oja and McLean. Defendant's failure to comply with an administrative rule or policy, however, does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001);

*Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

Moreover, Defendant McLean's actions or inactions with respect to processing Plaintiff's grievances do not constitute a sanction on Plaintiff for expressing his complaint. Such retaliatory action could violate the First Amendment. Retaliation based upon a prisoner's exercise of his or her constitutional rights, such as the right to petition the government for redress, violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth such a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff mentions the word retaliation in his allegations specifically directed to Defendant McLean. To the extent Plaintiff meant to impose liability for retaliation because McLean colluded with the other retaliating Defendants, the claim is addressed and rejected above. At least some part of Plaintiff's retaliation claim against McLean, however, is specifically addressed to McLean's refusal to process the Oja and McLean grievances.

Plaintiff's allegations demonstrate that he was engaged in protected conduct. The filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). However, to the extent the failure to process a grievance could be considered adverse action, Plaintiff has failed to demonstrate that Defendant McLean was motivated by the protected conduct. Indeed, Plaintiff makes no allegations regarding McLean's retaliatory intent.

## VI. Other Retaliation Claims

Plaintiff alleges that the Defendants involved in the mail rejection—Liedel, Thompson, Ledford, and Kelly—rejected his mail for retaliatory reasons. As explained above, the mail was properly and constitutionally rejected under MDOC policy. Plaintiff alleges no facts to support the inference that the mail-rejecting Defendants were motivated by Plaintiff's protected conduct.

Plaintiff makes two additional specific retaliation claims: (1) a claim against Defendant Oja for the tattoo device misconduct; and (2) a claim against Thompson based on the threat to write misconduct reports and to wake Plaintiff up at 6:00 a.m. Plaintiff's allegations against Thompson do not state a viable retaliation claim. There are no facts alleged in the complaint to tie Thompson's threats to write a disobeying-a-direct-order misconduct ticket or an out-of-place misconduct ticket to Plaintiff's protected conduct. To the contrary, Plaintiff's allegations support the inference that Thompson made those threats to prompt Plaintiff to get up from his sleep at 2:30 in the afternoon and report to the lobby officer's desk. Absent some connection between the threat and the protected conduct, Plaintiff's claim fails.

Plaintiff's allegations demonstrate at least a superficial link between the threat to wake Plaintiff up the next day at 6:00 a.m. and the filing of his mail rejection grievances five months earlier. Plaintiff reports that Thompson said, "I remember you, I'm going to come wake you up at 6:00 a.m. Why were you sleeping at 2:30 in the afternoon. You are the one writing grievances on all of us for your Legal Mail. I'll be back to wake you up again." (Compl., ECF No. 1, PageID.10.) A specific threat of harm may satisfy the adverse-action requirement if it would deter a person of ordinary firmness from exercising his or her First Amendment rights, *see, e.g., Thaddeus-X*, 175 F.3d at 396, 398 (threat of physical harm); *Smith v. Yarrow*, 78 F. App'x 529, 542 (6th Cir. 2003) (threat to change drug test results). However, certain threats or deprivations are so *de minimis* that they do not rise to the level of being constitutional violations. *Thaddeus-X*, 175 F.3d at 398; *Smith*, 78 F. App'x at 542. The threat alleged here—to wake Plaintiff at 6:00 a.m.—is so *de minimis* that it could not deter a person of ordinary firmness from exercising his First Amendment rights. Once again, Plaintiff's retaliation claim against Defendant Thompson fails.

Plaintiff's retaliation claims against Defendant Oja, however, suffice to state a claim. Filing a grievance is clearly protected conduct, *Smith*, 250 F.3d at 103, a misconduct ticket is clearly adverse action, *Maben v. Thelen*, 887 F.3d 252, 266-67 (6th Cir. 2018), and Defendant's alleged statement that he is writing the misconduct ticket because Plaintiff grieved the prisoner counselors, links the protected conduct and adverse action with a retaliatory intent.

## VII.    Equal Protection

Plaintiff claims several times in his complaint that the Defendants denied him equal protection. His claims do not extend very far beyond simply parroting the words "equal protection." For example, Plaintiff alleges Defendant Liedel "[a]rbitrarily denied Plaintiff his

Access to Court, Due Process and Equal Protections Right as similarly situated prisoners, to convey to Attorney Ferry 3 meritorious Constitutional Claims for filing on Direct Appeal through Attorney or pro per Standard 4 brief . . . ."  (Compl., ECF No. 1, PageID.6.)  Plaintiff expands upon this point with regard to Defendant Kelly: "Denied my Equal Protection as similarly situated prisoners have access to consult and correspondence with their Attorney's and the Courts."[3]  (*Id*., PageID.7.)

Plaintiff further alleges Defendant Liedel "[a]rbitrar[il]y denied Plaintiff's Due Process and Equal Protection Right as similarly situated prisoners to present evidence, for a Fair Administrative Hearing on Mail Rejection." (*Id*.)  Plaintiff also alleged that Defendant Oja treated Plaintiff differently—by filing a false misconduct report against Plaintiff—than similarly situated prisoners who also have tattoos created subsequent to their arrival in prison but who have not filed grievances against Oja's staff.  Finally, Plaintiff alleges that Defendant McLean treated him differently than other prisoners similarly situated by denying Plaintiff access to internal affairs investigations and the grievance process.

The Equal Protection Clause prohibits discrimination by government actors which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference.  *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681-82 (6th Cir. 2011); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005).  The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006); *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) ("To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared

---

[3] Plaintiff makes parallel allegations with respect to Defendant Ledford, (Compl., ECF No. 1, PageID.9).

to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'").

An "equal protection" plaintiff must be similarly situated to his comparators "in all relevant respects . . . ." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992); *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011); *see also Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) ("'Similarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'"); *Tree of Life Christian Schools v. City of Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018) ("A plaintiff bringing an equal protection claim must be 'similarly situated' to a comparator in 'all relevant respects.'"). To be a similarly-situated member of another class, "the comparative [prisoner] 'must have dealt with the same [decisionmaker], have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or their employer's treatment of them for it.'" *Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 460 (6th Cir. 2011) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)). Plaintiff never identifies a single similarly situated prisoner, which is fatal to his claim. *Bertovich v. Vill. of Valley View*, 431 F. App'x 455, 458 (6th Cir. 2011) (Court affirmed dismissal of "class of one" equal protection claims where Plaintiff "[did] not point to any individual who was treated differently . . . ."); *see also Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 575 (6th Cir. 2008) ("Although the plaintiffs claim that they have been treated differently from other individuals seeking rezoning, they fail to allege any specific examples of *similarly situated* individuals . . . ."); *Sanders v. City of Hodgenville*, 323 F. Supp. 3d 904, 911 (W.D. Ky. 2018) ("Sander's class-of-one claim fails as a matter of law . . . Sanders fails to identify any similarly situated individual who was treated differently."); *Project Reflect, Inc. v. Metropolitan Nashville Bd. of Public Educ.*, 947 F. Supp. 2d

868, 881 (M.D. Tenn. 2013) (""Plaintiffs . . . fail to plead the existence of a similarly situated comparator . . . [therefore,] the Complaint does not contain sufficient factual matter to state a plausible claim.").

Although Plaintiff adequately alleges how he has been treated, his allegations regarding the Defendants' treatment of those similarly situated are hopelessly conclusory. For every wrong that was allegedly perpetrated upon him, Plaintiff simply claims that there exists a category of similarly situated prisoners whom Defendants treated differently. Facing comparable, but slightly less conclusory, allegations in *Rondigo L.L.C.*, 641 F3d at 673, the Sixth Circuit determined:

> [P]laintiffs' allegations that [there exists another person who] is similarly situated and that his more favorable treatment by defendants evidences unlawful discrimination are exposed as little more than "legal conclusions couched as factual allegations" and need not be accepted as true under Rule 12(b)(6) scrutiny. *See Twombly*, 550 U.S. at 555. Plaintiffs' factual allegations fail to "raise the right to relief above the speculative level." *Id*. They fail to warrant a "reasonable inference that [defendants are] liable for the misconduct alleged." *See Iqbal*, 129 S. Ct. at 1949. When the allegations are viewed in light of the exhibits attached to the complaint, they fall far short of making out a "plausible claim of entitlement to relief" under either equal protection theory. *See id.*

*Rondigo L.L.C.*, 641 F.3d at 684. Plaintiff's allegations here are no more than legal conclusions. He has failed to make a plausible claim of entitlement to relief for an equal protection violation.

**<u>Conclusion</u>**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Liedel, Thompson, Ledford, Kelly, and McLean will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  In addition, all of Plaintiff's claims against Defendant Oja, with the exception of Plaintiff's claim that Defendant Oja violated Plaintiff's First Amendment rights when, on December 9, 2018, in retaliation for Plaintiff's filing of an administrative grievance, Defendant Oja wrote a misconduct ticket against Plaintiff.

An order consistent with this opinion will be entered.

Dated:  July 16, 2019                                    /s/ Gordon J. Quist
                                                                    GORDON J. QUIST
                                                                    UNITED STATES DISTRICT JUDGE