UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

| | |
|---|---|
| JUAN SIMMONS #488776, | Case No. 2:18-cv-00091 |
| Plaintiff, | Hon. Gordon J. Quist<br>U.S. District Judge |
| v. | |
| JOSHUA OJA, | |
| Defendant. | |

## REPORT AND RECOMMENDATION

### I.    Introduction

State prisoner Juan Simmons filed this civil rights action pursuant to 42 U.S.C. § 1983.[1]  Simmons says that while he was incarcerated at Chippewa Correctional Facility (URF) in 2018, Defendants retaliated against him, in violation of the First Amendment, after he complained about his legal mail being rejected because it did not comply with prison policy.  The only remaining Defendant in the case is Corrections Officer (CO) Joshua Oja.

This report and recommendation addresses Oja's motion for summary judgment.  (ECF No. 21, PageID.115; ECF No. 22, PageID.117.)  Oja argues that

---

[1]    Simmons filed this action in a verified complaint on April 30, 2019.  (ECF No. 1, PageID.1.)

Simmons failed to properly exhaust his administrative remedies. Simmons has not responded to Oja's motion.[2]

The undersigned concludes that there is no genuine issue of fact as to whether Simmons properly exhausted his First Amendment retaliation claim. The record shows that he did not do so.

The undersigned respectfully recommends that this Court (1) grant Oja's motion and (2) dismiss Simmons's remaining First Amendment retaliation claim against Smith without prejudice.

## II.     Additional Relevant Procedural History

On April 30, 2019, Simmons filed this action in federal court. (ECF No. 1, PageID.1.) On July 16, 2019, the Court issued a screening opinion and order that dismissed all of Green's claims, except for Green's First Amendment retaliation claim against Smith. (ECF No. 4, PageID.47; ECF No. 5, PageID.71.)

On July 23, 2019, the case was stayed and referred to early mediation. (ECF No. 6, PageID.72.) The case failed to settle and was removed from early mediation. (ECF No. 19, PageID.111.)

---

[2]     When prisoner *pro se* litigants fail to respond to summary judgment motions, the Sixth Circuit holds that prisoners should be provided notice of the consequences of the motion before the district court grants the motion. *United States v. Ninety-Three Firearms*, 330 F.3d 414, 427-28 (6th Cir. 2003). This report and recommendation should serve as such a notice and Simmons will have an opportunity to object to it with 14 days of it being served to him. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). In addition, where a non-moving party makes no response to a motion for summary judgment, the Court must ensure that the moving party meets its initial burden before granting the motion. *Miller v. Shore Fin. Servs., Inc.*, 141 F. App'x 417, 419 (6th Cir. 2005).

### III. Summary of Plaintiff's Allegations

Simmons's only remaining claim is a First Amendment retaliation claim against Oja. (ECF No. 4, PageID.70.) Simmons alleges that on December 9, 2018, Oja issued him a false misconduct ticket in retaliation for Simmons's persistent complaining about not receiving legal mail from his attorney. (ECF No. 1, PageID.11.)

### IV. Summary of the Relevant Misconduct Ticket Issued to Green

On December 9, 2018, Oja issued him a Class I misconduct ticket for dangerous contraband. (ECF No. 22-4, PageID.168.) Specifically, Simmons received several new tattoos since arriving at URF.

Two days later, during an investigation into the incident, Simmons told URF's hearing investigator, Dan Durant, that he received the tattoos in July 2019 and that none of his tattoos were "fresh." (*Id.*, PageID.169.)

During his misconduct hearing, Simmons pled guilty. (*Id.*, PageID.167.) The hearing officer then determined Simmons was guilty because of Simmons's guilty plea, and because the temporal proximity between Simmons receiving his tattoos (July 2019) and MDOC staff noticing the tattoos (December 2019) is not a valid defense.

In Simmons's verified complaint, he states that he requested an appeal of his guilty determination and that he never received a response to his request. (ECF No. 1, PageID.11.) Attached to the verified complaint is Simmons's request for an appeal.

3

(ECF No. 1-3, PageID.22.) The request does not possess a response from MDOC or any indication that the request was received by MDOC.

In an affidavit, MDOC Analyst Carolyn Nelson attests that the MDOC never received a request for an appeal from Simmons based upon her review of the MDOC Request for Rehearing database. (ECF No. 22-4, PageID.166.)

V.    **Summary Judgment Standard**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[3] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

VI.   **Exhaustion of Administrative Remedies**

---

[3]    Disputed issues of fact regarding exhaustion under the PLRA may be decided in a bench trial and need not be submitted to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the

administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). In rare circumstances, an administrative remedy will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance [or other administrative] process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. ___, 136 S.Ct. 1850, 1859-60 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*)*. And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id*. When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 2007 U.S. Dist. LEXIS 81101 at *12.

The most common procedure through which a prisoner in MDOC custody exhausts his administrative remedies is the grievance procedure set forth in

6

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective on July 9, 2007, superseded on March 18, 2019. Where grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

However, where other administrative remedies are available, the prisoner is required to exhaust those available remedies prior to filing a federal lawsuit. For example, where an inmate claims that he received a retaliatory false misconduct, whether a Class I misconduct or a Class II or III misconduct[4], the inmate must first

---

[4] Violations of written rules within the MDOC are classified as either Class I, Class II or Class III misconducts. Class I consists of the most severe violations, and Class III consists of the least severe. While Class I misconducts are considered "major" misconducts and are "subject to all hearing requirements set forth in MCL 791.252", Class II and III misconducts are considered "minor" misconducts and are "subject to all requirements currently set forth in Department Administrative Rules and policy directives for 'minor' misconducts." MDOC Policy Directive (PD) 03.03.103 ¶ B (eff. date 07/01/18).

7

raise the issue during the Misconduct Hearing. *Siggers v. Campbell*, 652 F.3d 681, 693-94 (6th Cir. 2011). If the inmate is claiming to have received a retaliatory Class I misconduct, he or she must then must "file a motion or application for rehearing [of his misconduct conviction] in order to exhaust his or her administrative remedies before seeking judicial review of the final decision or order." Mich. Comp. Laws § 791.255(1); *see also Siggers*, 652 F.3d at 693-94. Alternatively, if the inmate is claiming to have received a retaliatory Class II or III misconduct, he or she must file an appeal based on retaliation. MDOC PD 03.03.105 ¶¶ UUU-XXX; *see also Jones v. Heyns*, 2014 U.S. Dist. LEXIS 55712 at *13-17 (W.D. Mich. Jan. 28, 2014).

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[5]

## VII. Analysis

Oja argues that there is no genuine issue of fact that Simmons failed to properly exhaust Simmons's claim against him. For the reasons explained below, the undersigned agrees. In addition, despite any of Simmons's statements in his verified complaint and unacknowledged appeal request, the undersigned concludes that there is insufficient evidence in the record to hold that Simmons is excused from the PRLA's exhaustion requirement under *Ross*, 136 S.Ct. at 1859-60.

In cases like this one, where a plaintiff alleges that he or she received a false misconduct ticket in retaliation for protected conduct, in violation the First Amendment, the plaintiff does not utilize the prison's grievance process to exhaust his or her claim. *See Siggers*, 652 F.3d at 693-94. Instead, the plaintiff must raise the issue of retaliation during his or her misconduct hearing and then appeal a guilty determination based on retaliation to properly exhaust the claim. *Id*. Because Simmons's only remaining claim is a First Amendment retaliation claim based on Simmons allegedly receiving a false misconduct ticket, the undersigned applies the *Siggers* framework.

---

[5] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

9

A review of the record shows that Simmons failed to raise the issue of retaliation during his misconduct hearing. (ECF No. 22-4, PageID.167.) Instead of raising the issue of retaliation, as shown below, Simmons pled guilty. (*Id.*)

**MICHIGAN DEPARTMENT OF CORRECTIONS**
**CLASS I MISCONDUCT HEARING REPORT**
Rev. 10/10

| Prisoner | Prisoner Name | Facility Code | Lock | Violation Date |
|---|---|---|---|---|
| 488776 | Simmons | URF | A 252 | 12/09/2018 |

Charge(s)
**Possession of Dangerous Contraband**

If Charge Changed by Hearing Officer

Plea: ☒ Guilty   ☐ Not Guilty

Misconduct Report Read to and Discussed with Prisoner ☒ (check if applies)
Hearing Investigation Read to and Discussed with Prisoner ☒ (check if applies)
No Hearing Investigation Requested ☐ (check if applies)

**EVIDENCE/STATEMENTS IN ADDITION TO MISCONDUCT REPORT**

Unless otherwise noted all documents are one page. The prisoner is present and the misconduct report is reviewed with him along with his statement he got them in July and he has not gotten any since and the officer did not find any tattoo paraphernalia or see him get them, and 4 pictures. **Prisoner Simmons admits his guilt** Prisoner has nothing further to add. No further evidence is requested or is needed. Prisoner is informed of the findings, sanctions and sanction dates and told that he will receive the report later.

**REASONS FOR FINDINGS**

Based on the uncontested facts, Prisoner Simmons assisted another prisoner in possessing a tattoo device without staff authorization by having that prisoner give him a tattoo on or before 12-9-18 at 1640 hrs. A tattoo device is Dangerous Contraband per the definition of the charge. It is not a defense that he was not found with tattoo paraphernalia or seen getting it as the new tattoos are proof that he had someone possess a tattoo device as that is the only way to get a tattoo. It is not a defense that he got them in July because he went to prison before July so he had to have been in prison when he got them and he has yet to get a misconduct for this behavior so the misconduct is appropriate as they do not need to catch him in the act or within so many days. A misconduct can be written it is discovered and this was only discovered when the officer saw the new tattoos. **Prisoner Simmons admits his guilt.** The Officer is clear and factual in his statement and is found to be credible. The charge is upheld.

Under *Siggers*, 652 F.3d at 693-94, Simmons was required to raise the issue of retaliation. He failed to do so. Because Simmons failed to raise the issue of retaliation during his misconduct, it is the opinion of the undersigned that there is no genuine issue of fact that Simmons failed to properly exhaust his claim against Oja.

Despite not having the benefit of Simmons's response to Oja's motion, the undersigned notes that Simmons attests in his original complaint that he made a request to appeal his guilty determination, and that the request went unacknowledged. (ECF No. 1, PageID.11.) As shown below, Simmons's request for an appeal did raise the issue of retaliation. (ECF No. 1-3, PageID.22.) The inclusion of the unacknowledged request and Simmons's statements suggest that Simmons may contend that he is excused from the PRLA's exhaustion requirement under *Ross*, 136 S.Ct. at 1859-60.

[Form: Michigan Department of Corrections Request for Rehearing (CSJ-418), completed by prisoner Simmons (#488776) at URF, regarding a Major Misconduct Hearing on 12-12-18 for Possession of Dangerous Contraband (030), date of misconduct 12-9-2018. The form contains a handwritten explanation raising five issues challenging the misconduct finding, including due process violations, alleged forgery of the record, and retaliation claims. Signed 12-31-18. Decision section is blank.]

The Eastern District of Michigan explained that for prisoners to be entitled to excusal under *Ross*, prisoners bear the burden to show that the prison's administrative remedies are unavailable to them. *Alexander v. Calzetta*, No. 2:16-

12

CV-13293, 2018 WL 8345148, at *6 (E.D. Mich. Nov. 30, 2018), report and recommendation adopted, No. 16-CV-13293, 2019 WL 1011106 (E.D. Mich. Mar. 4, 2019). Here, the record is devoid of any evidence that shows prison officials thwarted Simmons's attempt to exhaust his claim by failing to acknowledge his request for a misconduct appeal. The Court is only provided with an unacknowledged request and a sworn statement about the request being unacknowledged. (ECF No. 1, PageID.11; ECF No. 1-3, PageID.22.) The sworn statement falls short of claiming that prison official intentionally thwarted Simmons's attempt to exhaust his claim. In addition, MDOC Analyst Nelson attests that MDOC never received Simmons's request for a misconduct appeal.

Because the record is devoid of evidence showing that Simmons is excused from the PRLA's exhaustion requirement under *Ross*, 136 S.Ct. at 1859-60, the undersigned concludes that Simmons is not excused and that there is no genuine issue that he failed to exhaust his claim against Oja.

### VIII.  Recommendation

The undersigned respectfully recommends that this Court (1) grant Oja's motion and (2) dismiss Simmons's remaining First Amendment retaliation claim against Oja without prejudice. If the Court accepts this recommendation, the case will be dismissed.

Dated:  July 24, 2020                               /s/ *Maarten Vermaat*
                                                                      MAARTEN VERMAAT
                                                                      U. S. MAGISTRATE JUDGE

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).